UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| ANTHONY TURNER JOHNSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| VS. | ) | No. 19-1048-JDT-cgc |
|  | ) |  |
| MADISON COUNTY, ET AL., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

ORDER DISMISSING COMPLAINT, GRANTING LEAVE TO AMEND
AND DENYING MOTIONS TO APPOINT COUNSEL (ECF Nos. 18 & 19)

On March 4, 2019, Plaintiff Anthony Turner Johnson, who currently is incarcerated at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Johnson's complaint addresses alleged conditions at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee, where Johnson previously was confined. (*Id.* at PageID 2.) After Johnson submitted the necessary financial documents, the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) On June 28, 2019, Johnson submitted an amended complaint listing several additional Defendants. (ECF No. 13.) The Clerk shall record the Defendants as Madison County; Nurses Kayla, Sarah, and Rita;[1] Corrections Officers (C/O) First Name Unknown (FNU) Carter,

---

[1] Johnson does not provide a last name for any of the nurses he sues.

B. Giovanni, and FNU Blurton; Sergeants FNU Brown and FNU Gilly; and Lieutenant FNU Balderama.

Johnson alleges the CJC is unsanitary and that inmates are threatened and harassed when they try to voice their concern about the conditions. (ECF No. 1 at PageID 2.) Unnamed captains, sergeants, and lieutenants allegedly denied the inmates mat covers to avoid contact with mold. (*Id.*) He asserts the CJC is overcrowded and infested with spiders, and the toilets leak. (*Id.* at PageID 3.) Unspecified CJC employees allegedly withheld important mail from inmates and denied others free exercise of their religion. (*Id.*) Johnson alleges he was forced to become a vegetarian because the CJC would not provide him Kosher meats. (*Id.*) The mold in the CJC caused asthma flare ups and skin rashes and bumps on some inmates. (*Id.* at PageID 4.) The CJC allegedly told inmates to follow certain cleaning policies but did not provide cleaning products. (*Id.*) Gnats allegedly contaminated inmates' food, causing inmates to contract Hepatitis A. (*Id.*) Trustee inmates did not wash their hands after handling mops and buckets and before serving food. (*Id.*) Food and drink sometimes contained paint chips or hair, which sickened inmates, but many did not receive medical care. (*Id.* at PageID 4-5.)

In his amended complaint, Johnson names several individuals allegedly responsible for the many violations. (ECF No. 13.) He alleges that COs Blurton, Giovanni, and Carter told trustee inmates to hand out food wearing the same gloves worn when handling cleaning supplies. (*Id.* at PageID 53.) These officers would then serve inmates through food flaps coated in chipping paint that could fall into food and drinks. (*Id.*) Defendants Gilly, Brown, and Balderama allegedly placed inmates with tuberculosis in open population with other inmates. (*Id.*) Balderama also overpopulated rooms with three to four inmates, even though the cells are designed for only two. (*Id.*) Inmates' sick-call requests were allegedly "neglected" by Nurses Kayla and Sarah. (*Id.*)

Defendant Carter did not call for maintenance when the toilets were not working. (*Id.*) On one three-day occasion, Balderama locked down the facility and denied inmates an hour of recreation, a shower, and phone calls. (*Id.* at PageID 54.) For another three-week period, inmates had to eat cold meals. (*Id.*) Johnson also alleges that he developed tuberculosis because of inadequate medical care at the CJC. (*Id.*) Although he tested negative while at the CJC, he was retested after being moved to another facility and tested positive. (*Id.*)

Johnson seeks to sue on behalf of himself and several other current or past inmates of the CJC. (ECF No. 1 at PageID 9.) He does not specify the relief he seeks but states only that he is "wanting of compensation." (*Id.* at PageID 6.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Johnson filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The claims in Johnson's complaint are directed at Madison County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

The complaint alleges numerous problems at the CJC including, among others, uncleanliness, poor inmate treatment, and overcrowding. The complaint at no point, however, suggests that the CJC's many issues are because of an unconstitutional policy or custom of Madison County. The complaint merely alleges that the problems exist. The complaint therefore fails to state a claim against Madison County.

Johnson's amended complaint lists several individuals allegedly responsible for some of the problems at the CJC. However, Johnson at no point alleges how he was personally affected or harmed by the practices of these individuals. He instead alleges general complaints on behalf of

the inmates at the CJC. Johnson does not have standing to assert claims on behalf of any inmate other than himself. One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless the plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001). Because Johnson cannot sue on behalf of other inmates at the CJC and has not alleged that he suffered any personal injury from the policies or practices of which he complains, he has not established that he has standing to pursue this action and has failed to state a claim on which relief may be granted.

There are two exceptions: Johnson's allegations that "[t]hey made me a vegetarian because they don't support my beliefs" and that, because he was not given proper medical treatment while at the CJC, he contracted tuberculosis. Johnson, however, does not name any individual responsible for these alleged violations. He alleges only that "they" denied him Kosher meals and the "medical staff" would not respond to his sick call requests. These allegations fail to state a claim against any Defendant. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming that, because Plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint failed to state a claim for relief); *Gray v. Weber*, 244 F. App'x

6

753, 754 (8th Cir. 2007) (affirming dismissal of inmate's § 1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'").

For the foregoing reasons, Johnson's complaint and amended complaint are subject to dismissal in their entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Johnson should be given the opportunity to further amend his complaint.

In conclusion, the Court DISMISSES Johnson's complaint and amended complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to further amend, however, is GRANTED. Any amendment must be filed within twenty-one days after the date of this order, on or before **November 18, 2019**.

Johnson is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in

the original complaint.  Each claim for relief must be stated in a separate count and must identify each defendant sued in that count.  If Johnson fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Johnson has also moved for the appointment of counsel.  (ECF Nos. 18 & 19.)  Because his complaint is still in the screening phase, and the Court has not yet directed that any defendant should be served with process, his motions are premature.  The motions are therefore DENIED without prejudice to refiling, if necessary, at a later, appropriate time.

IT IS SO ORDERED.

                                       s/ **James D. Todd**
                                       JAMES D. TODD
                                       UNITED STATES DISTRICT JUDGE